# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

RAMONIA CARTER                                                           PLAINTIFF

vs.                                                    CIVIL ACTION NO. 1:11CV255-B-A

MICHAEL ASTRUE,
Commissioner of Social Security                                    DEFENDANT

## REPORT AND RECOMMENDATION

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Ramonia Carter for a period of disability (POD) and disability insurance benefits (DIB) under Section 216(I) and 223 of the Social Security Act and for supplemental security income (SSI) payments under Section 1614(a)(3) of the Act. Plaintiff applied for POD, DIB and SSI on March 11, 2009 alleging that she became disabled on June 17, 2007. Docket 10, p. 59-64, 161-68. The plaintiff's claim was denied initially and on reconsideration. *Id.* at 72, 81. Plaintiff timely requested a hearing, which was held on July 12, 2001. *Id.* at 42-63, 84, 160. The ALJ conducted a second hearing to obtain vocational expert (VE) testimony on March 28, 2011, (*Id.* at 28-44) and issued an unfavorable decision on April 5, 2011. *Id.* at 10-21. Plaintiff requested and was denied review by the Appeals Council via letter dated October 13, 2011. *Id.* at 1-3. The plaintiff timely filed the instant appeal from the Commissioner's most recent decision, and it is now ripe for review. As the parties have not consented to have a magistrate judge conduct all the proceedings in this case, the undersigned submits this report and recommendation to United States District Judge Neal B. Biggers.

# I. FACTS

The plaintiff was born on March 10, 1964, and was forty-three years old at the time of her alleged onset date. Docket 11, p. 163. She completed the tenth grade, and her past relevant work was as a greeting card maker. *Id.* at 205, 207. She contends that she became disabled on June 17, 2007 as a result of fibromyalgia, neuropathy, obesity, degenerative disc disease, arthritis, diabetes mellitus, and hypertension. *Id.* at 212.

The ALJ determined that the plaintiff suffered from "severe" impairments including obesity, degenerative disc disease, arthritis, diabetes mellitus, and hypertension (Docket 10, p. 13) but that her alleged impairments relating to her vision, fibromyalgia and migraines were non-severe.[1] *Id.* at 16. Despite finding that plaintiff suffered from multiple severe impairments, he concluded that these impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2003). Docket 11, p. 17. The ALJ determined that the plaintiff retains the Residual Functional Capacity (RFC) to

> perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can lift and carry twenty pounds occasionally and ten pounds frequently. She can stand and walk a total of six hours out of an eight-hour work day. She can sit two work hours out of an eight-hour work day. She can occasionally balance, stoop, crouch, kneel, crawl and climb ramps and stairs but never climb ladders, ropes, or scaffolds.

*Id.* at 18. In light of testimony by a vocational expert [VE] at the hearing, the ALJ found

---

[1]On appeal, plaintiff asserts that the ALJ did not properly consider her fibromyalgia or neuropathy. Although the court will not address this issue, the ALJ on remand should more thoroughly consider whether these alleged impairments are actually severe.

plaintiff capable of performing her past relevant work as a greeting card maker.[2] Docket 10, p. 20. Therefore, the ALJ found plaintiff not disabled under the Social Security Act. *Id.*

Plaintiff claims the ALJ erred because he did not properly consider the plaintiff's vocationally limiting impairments, did not accord proper weight to the opinions of the plaintiff's treating physician, and improperly determined the plaintiff's RFC. Because the undersigned is of the opinion that the ALJ did not properly evaluate and weigh the opinions of the plaintiff's treating physician, therefore rendering his opinion unsupported by substantial evidence, the court need not address remaining issues.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[3] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[4] First, plaintiff must prove she is not currently engaged in substantial gainful activity.[5] Second, plaintiff must prove her impairment is "severe" in that it "significantly limits [her] physical or

---

[2] This court has never seen any examination of a VE as brief as the examination in this case. The VE was not provided any hypothetical at all and it was not even clear what portion of the file the VE had reviewed or whether he reviewed anything other than plaintiff's past relevant work. The ALJ did not give the VE any information concerning plaintiff's limitations or work capabilities. There was no testimony concerning whether the plaintiff, with her limitations, could perform her prior employment.

[3] *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

[4] *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

[5] 20 C.F.R. §§ 404.1520(b), 416.920(b) (2010).

mental ability to do basic work activities . . . ."[6] At step three the ALJ must conclude plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[7] If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the physical and mental demands of her past relevant work.[8] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[9] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that she cannot, in fact, perform that work.[10]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999); citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review

---

[6] 20 C.F.R. §§ 404.1520(c), 416.920(c)(2010).

[7] 20 C.F.R. §§ 404.1520(d), 416.920(d) (2010). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).

[8] 20 C.F.R. §§ 404.1520(e), 416.920(e) (2010).

[9] 20 C.F.R §§ 404.1520(g), 416.920(g) (2010).

[10] *Muse*, 925 F.2d at 789.

and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[11] even if it finds that the evidence leans against the Commissioner's decision.[12]  The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted).  Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side.  *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).  The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed."  *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### III.  DISCUSSION

Plaintiff contends on appeal that the ALJ's failure to afford proper weight to the opinions of her treating physician caused the ALJ to reach an RFC finding that is not supported by substantial evidence.  Docket 15, p. 1.  Dr. Charles A. Ozborn has been the plaintiff's treating physician for over four years and had treated plaintiff thirty-one times at the time of the second hearing.  Docket 10, p. 38.  The ALJ found that Dr. Ozborn's opinion was only entitled little weight because it was inconsistent with the record as a whole.  The ALJ also noted that "Dr.

---

[11] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[12] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

5

Ozborn fails to offer any explanation as to the severity of the claimant's limitations in this assessment, and these aforementioned assertions are not even supported in his own medical records." Docket 10, p. 19. The Secretary responds that Dr. Ozborn's opinion was properly given little weight and that the record provides sufficient evidence for the ALJ's evaluation of the treating physician's opinion. Docket 16, p. 12.

Dr. Ozborn submitted a "Medical Opinion Re: Ability to Do Work-Related Activities" on September 4, 2010. Docket 10, p. 580-84. Based upon his treatment records, Dr. Ozborn provided limitations on plaintiff's work activities which result in a less-than-sedentary range of work. *Id.* He indicated that plaintiff could carry less than ten pounds frequently, stand and walk less than two hours in an eight-hour day, sit for two hours in an eight-hour day, must be able to shift at will from standing/walking and lie down at unpredictable intervals during a work shift. His opinion was that her reaching, handling, fingering, feeling and pushing/pulling are affected by her impairments and that she would miss work at least three times a month due to her impairments. *Id.* The ALJ found fault in the reasoning which Dr. Ozborn provided for each of these limitations because the doctor offered no explanation for the severity of the limitations. Docket 10, p. 24. Instead of requesting more information, such as clarification of his diagnosis, more details of the severity of the limitations or his treatment notes and tests, the ALJ simply chose to dramatically discount Dr. Ozborn's opinion and afford it only little weight.

Dr. Karen Hulett, a non-examining agency physician, concluded on May 15, 2008, that plaintiff could perform medium work. Docket 10, p. 521-28. She indicated that plaintiff could occasionally lift fifty pounds and frequently lift twenty-five pounds, stand and/or walk six hours in an eight-hour day, and sit for six hours in an eight-hour day. She also concluded that plaintiff

has no manipulative limitations and made no notation of plaintiff's prior carpal tunnel surgery or any limitations resulting from plaintiff's contining carpal tunnel issues. *Id.* at 524. Dr. Hulett never examined the plaintiff, and she did not have the benefit of many of plaintiff's medical records that were submitted to the Secretary after she formulated her opinion three years before the second hearing. Additionally, Dr. Hulett simply provided a check-box form and contained the least amount of detail of any of the reports provided by any other physicians.[13] However, the ALJ afforded Dr. Hulett's opinion significant weight, the most he afforded to any opinion provided concerning plaintiff's impairments and abilities. Docket 10, p. 19. The ALJ noted that Dr. Hulett "overstated some of the claimant's functional limitations," but still afforded her opinions more weight than other physicians who actually examined the plaintiff and particularly the physician who treated the plaintiff more than thirty times. Docket 10, p. 19.

Dr. Jim Adams, a consultative physician, examined the plaintiff on two occasions and provided two reports. Docket 10, p. 403-05, 531-33. Upon his first examination on March 14, 2008, Dr. Adams concluded that plaintiff "is developing peripheral neuropathy of the hands and feed and had bilateral carpal tunnel releases with poor results. I would expect her ability to be able to perform repetitive gripping is limited." Docket 10, p. 405. The ALJ determined that Dr. Adams's opinion was "only partially consistent with the objective findings and the medical record as a whole" and afforded it only some weight. *Id.* at 19. The ALJ did not provide any indication of what objective findings and medical record evidence are inconsistent with Dr.

---

[13] The Commissioner has in other cases questioned the value of "check box forms" when it was submitted by a treating physician or a physician who supplied opinions that benefitted the plaintiff. Paradoxically, even though the ALJ gave a consulting physician who only provided a "check box form" the greatest weight here, the Commissioner makes no mention of this fact.

7

Adams's opinions.

Dr. Adams' examined plaintiff again on July 16, 2010. Docket 10, p. 531-33. Although he did not specify any limitations or opinions on her ability to work, the ALJ's opinion indicates that Dr. Adams found plaintiff to be "generally able to perform many functions" (Docket 10, p. 19) and accorded this second report significant weight. *Id.* The decision to afford Dr. Adams's second report significant weight and his first report some weight is particularly puzzling because the first report is the only one that contained any limitations.

An ALJ who discounts a treating physician's medical opinions must "perform a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Because the ALJ did not follow these criteria, says plaintiff, his refusal to afford controlling weight to Dr. Ozborn's opinions was error as a matter of law. The Commissioner argues that the ALJ's decision to give little weight to Dr. Ozborn's opinion was properly within the ALJ's discretion as the finder of fact to resolve conflicts in the evidence of record. Docket 16, p. 12-15.

Reading the record as a whole, the undersigned is of the opinion that the ALJ's opinion is unsupported by substantial evidence and should be remanded for further consideration. The ALJ did not provide any explanation of what is inconsistent in Dr. Ozborn's opinion or any details of where in his record his opinions contradict the other objective medical record evidence. While the ALJ did note that Dr. Ozborn treated the plaintiff "for a multitude of symptoms since 2008," he did not discuss any of the other required factors contained 20 C.F.R. 404.1527(d)(2). He did not evaluate the frequency of Dr. Ozborn's examinations, the nature and extent of the treatment relationship, the support of the physician's opinion afforded by the medical evidence of record,

8

the consistency of the opinion with the record as a whole, or Dr. Ozborn's specialization. Simply stating that Dr. Ozborn's opinions are not supported by the record as a whole is insufficient.

An ALJ has a duty to contact a treating physician or other medical sources "[w]hen the evidence . . . receive[d] from [a] treating physician . . . is inadequate . . . to determine whether [a claimant] is disabled." 20 C.F.R. §§ 404.1512(e), 416.912(e). These regulations further provide "additional evidence or clarification *will* be sought" [emphasis added by the court] "when the report from [a] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1512(2)(1), 416.912(e)(1). Additionally, "[a]n 'ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position.'" *Morgan v. Astrue*, 2010 WL 2697170, *8 (N.D.Tex. July 7, 2010), citing *Loz v. Apfel*, 219 F.3d 378,393 (5th Cir. 2000).

A treating physician such as Dr. Ozborn, who has seen the plaintiff regularly for at least four years at the time of the hearing, has a unique perspective regarding the plaintiff's abilities, limitations, medical history and diagnosis. There is no evidence in the record that the ALJ made any attempt to contact Dr. Ozborn for clarification of the inconsistencies in his record and opinion or to obtain additional information concerning plaintiff's impairments. It may be that there is substantial evidence to deny the plaintiff's claims, but it is unclear whether the ALJ considered all of the necessary factors before declining to afford controlling weight to Dr. Ozborn's opinion and giving the most weight to the, by then, over three-year old opinion of a non-examining physician. Further, it is clear that additional development of the record,

specifically in the form of additional opinions from the treating physician, would have been obtained easily, and probably helpful, had the ALJ sought such information. In such a case as this, where the ALJ wishes to rely on a non-examining physician whose opinions are over three years old and accord a physician who has treated a claimant on a frequent basis for four years "little weight," the Commissioner should contact that treating physician. 20 C.F.R. § 404.1509p(b) (2000). Therefore, the undersigned is of the opinion that the decision of the Commissioner was not supported by substantial evidence and should be remanded for further proceedings consistent with this opinion.

The parties are referred to 28 U.S.C. § 636(b)(1)(B) and FED. R. CIV. P. 72(b) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections are required to be in writing and must be filed within fourteen (14) days of this date and "a party's failure to file written objections to the proposed findings, conclusions and recommendation in a magistrate judge's report and recommendation within [14] days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court . . . ." *Douglass v. United States Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc) (citations omitted).

## IV. PLAINTIFF'S REMAINING ARGUMENTS

The undersigned recommends that this action be remanded to the ALJ for (1) further evaluation of plaintiff's subjective complaints, including her fibromyalgia and neuropathy, including providing the proper rationale to evaluate her symptoms and her impairments, and clarification of plaintiff's physical limitations in order to properly question a VE and reach an

RFC based upon the facts of the record, (2) further consideration to plaintiff's treating physician, including re-contacting the physician to provide additional evidence and clarify any discrepancies in the record, and (3) further evaluation of plaintiff's ability to work based upon the proper evaluation of plaintiff's complaints and proper evaluation of the treating physician's opinion, including supplemental evidence from a VE if necessary. Because the undersigned recommends that this action be remanded to the ALJ for further evaluation of the treating physician's records and opinions and for analysis to be conducted in accordance with *Newton* and applicable sections, the court need not address the merits of the plaintiff's remaining arguments at this time.

    Respectfully submitted, this the 27th day of August, 2012.

                                             /s/ S. Allan Alexander
                                            UNITED STATES MAGISTRATE JUDGE